## AYALA v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. October 27, 1920.)

No. 1372.

1. **Criminal law ⬦⟶1044—Court may consider whether there was any substantial evidence, though motion for directed verdict was not renewed.**

   Though a motion for directed verdict at the close of the evidence for the prosecution was not renewed after accused had introduced his evidence, the Circuit Court of Appeals may determine whether there was any substantial evidence to support the verdict, though the question was not properly raised, where a plain error was committed at the trial.

2. **Criminal law ⬦⟶1159(2)—Where there was no substantial evidence to support a conviction, judgment will be reversed.**

   In a prosecution under Penal Code, § 237 (Comp. St. § 10407), for bringing into Porto Rico from a foreign country lottery tickets and lists, evidence that accused had such tickets and lists in his possession when leaving a ship which had come from another country, but had previously touched at two other Porto Rican ports, and that he threw them into the water when they were demanded, *held*, that there was no substantial evidence to sustain a conviction, so that judgment will be reversed.

3. **Criminal law ⬦⟶1159(2)—Evidence sustaining inference consistent with innocence, equally with guilt, will not support a verdict of guilty.**

   While it is the province of the jury to draw inferences which may reasonably be drawn from the evidence, there is not substantial evidence to support a conviction, where inferences as consistent with innocence as with guilt may be drawn from the proven facts.

4. **Criminal law ⬦⟶552(1)—Attempt to destroy evidence relevant, but not conclusive.**

   While the attempt of accused to destroy evidence against him is competent to go to the jury, it is not alone conclusive evidence of guilt.

In Error to the District Court of the United States for the District of Porto Rico; P. J. Hamilton, Judge.

Cornelio Ayala was convicted of bringing into the United States lottery lists and tickets, and he brings error. Reversed and remanded.

Hugh R. Francis, of San Juan, P. R. (Francis & De la Haba, of San Juan, P. R., on the brief), for plaintiff in error.

Thomas J. Boynton, U. S. Atty., of Boston, Mass., for the United States.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. The plaintiff in error, hereinafter called the defendant, was convicted at the April term, 1918, of the District Court of the United States for Porto Rico, upon an indictment in which he was charged, in two counts, with violation of section 237 of

⬦⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the Penal Code of the United States (Comp. St. § 10407), the material part of which is as follows:

"Whoever shall bring or cause to be brought into the United States or any place subject to the jurisdiction thereof, from any foreign country, for the purpose of disposing of the same, any paper, certificate, or instrument purporting to be or to represent a ticket, chance, share, or interest in or dependent upon the event of a lottery, gift enterprise, or similar scheme, offering prizes dependent in whole or in part upon lot or chance, or any advertisement of, or list of the prizes drawn or awarded by means of, any such lottery, gift enterprise, or similar scheme, * * * shall, for the first offense, be fined not more than one thousand dollars, or imprisoned not more than two years, or both."

In the first count in the indictment he was charged with having brought or caused to be brought into the United States from a foreign state, to wit, the republic of Santo Domingo, to the island of Porto Rico, of the United States, 24 lists, papers, certificates, or instruments purporting to be and to represent and contain the numbers of the winning tickets corresponding to a drawing held on March 25, 1917, in a lottery known as "Padre Billini" in the republic of Santo Domingo.

In the second count he was charged with having brought or caused "to be brought into the United States from a foreign country, to wit, from the republic of Santo Domingo, into the district of Porto Rico, of the United States, a large number of papers, certificates, or instruments * * * purporting to be and to represent tickets, shares, chances, and interests in and dependent upon the event of a certain lottery offering prizes dependent in whole or in part upon lot or chance, to wit, the lottery in favor of the 'Manicomio, Padre Billini,' republic of Santo Domingo, which said lottery as aforesaid was to take place and be holden on the 13th day of May, 1917," and that he brought said lottery tickets into the United States for the purpose of disposing of the same.

The errors assigned are: The admission of certain evidence; instructions of the court; and the denial of a motion to instruct the jury to return a verdict for the defendant.

. There was but little direct evidence, either upon the part of the government or of the defendant. That upon the part of the government, briefly stated, was that one Domingo Cummings, who was an inspector of customs at Ponce, on the island of Porto Rico, in the discharge of his official duties, had occasion to go aboard a Cuban steamship, the Santiago de Cuba, on the 9th day of April, 1917, which had arrived in the harbor of Ponce; that he saw the defendant on board the steamship with his wife and children, preparing to leave the ship to go aboard a launch which was to take them ashore, and thought the defendant was trying to avoid him and to conceal a package; that he followed the defendant down the gangplank of the steamer aboard the launch, and there demanded the package of him; that the defendant refused to give it to him, and when he made an effort to take it the defendant threw it overboard. The inspector recovered it from the water, and upon examination found that it contained what purported to be lottery tickets and lists of drawings in favor of the Insane Asy-

lum Padre Billini, located at Santo Domingo, in the Dominican Republic.

There was evidence that the defendant was intending to sail upon the steamer to Santo Domingo. It does not appear whether he' or his wife and children had come in on the steamer, or where they boarded it; but it did appear that they were leaving the steamer with him when the inspector attempted to obtain the package from him. The testimony of the inspector was corroborated by that of two boatmen who were in the launch. Evidence as to his character was the only evidence introduced by the defendant.

[1] At the close of the evidence on the part of the government the defendant requested the court to dismiss the case, "because of lack of any evidence or any showing by the government sustaining the indictment." This request was refused and exception taken. The defendant then introduced character testimony only, and at the close of all the testimony the defendant did not request the court to direct the jury to return a verdict of not guilty. The general rule is that, if the defendant, after denial of his motion to direct a verdict at the close of the government's testimony, introduces testimony in his own behalf, he thereby waives his motion, and it is his duty to again renew his motion after all the evidence is closed. But, notwithstanding this rule, the Supreme Court has held that, where a plain error has been committed in the trial of a criminal case, it will be considered by the court, although a motion for a directed verdict was never made.

In Wiborg v. United States, 163 U. S. 632, 658, 16 Sup. Ct. 1127, 1197, 41 L. Ed. 289, the court said:

"No motion or request was made that the jury be instructed to find for defendants or either of them. Where an exception to a denial of such a motion or request is duly saved, it is open to the court to consider whether there is any evidence to sustain the verdict, though not to pass upon its weight or sufficiency; and although this question was not properly raised, yet if a plain error was committed in a matter so absolutely vital to defendants, we feel ourselves at liberty to correct it."

In discussing the right of the appellate court to consider in criminal cases the ground upon which a verdict rests, Judge Sanborn said in Fielder v. United States, 227 Fed. 832, 833, 142 C. C. A. 356, 357:

"There is, however, an exception to the rule to the effect that in a criminal case, where the life or liberty of the citizen is at stake, the appellate court may, in the interest of justice, examine the evidence to see whether there was any substantial evidence whatever against the accused, and if none is found may reverse the judgment, although no motion or request was made on that ground, and no exception was taken or assignment of error made."

And he cites Wiborg v. United States, supra, Clyatt v. United States, 197 U. S. 207, 221, 25 Sup. Ct. 429, 49 L. Ed. 726, Crawford v. United States, 212 U. S. 183, 194, 29 Sup. Ct. 260, 53 L. Ed. 465, 15 Ann. Cas. 392, Weems v. United States, 217 U. S. 349, 362, 30 Sup. Ct. 544, 54 L. Ed. 793, 19 Ann. Cas. 705, and several Circuit Court of Appeals cases.

Notwithstanding the failure of the defendant to move at the close of all the testimony for a directed verdict, we feel authorized to con-

sider the error which has been assigned, as if the motion had been made at the proper time, and to determine whether there was any substantial evidence upon which the verdict of the jury could rest.

The jury were correctly told by the court that it was necessary for the government to prove that the defendant had brought or caused the lists and lottery tickets in question to be brought from Santo Domingo into the district of Porto Rico, and upon this the court instructed the jury as follows:

"There is no evidence one way or the other upon that very interesting fact, and it is something that you would have to infer—get at by inference, as you think the facts may justify. If you think they were brought from Santo Domingo by anybody for disposition, and that this man then got hold of them to carry out that disposition, he would have, in the eye of the law, caused the lottery tickets to be brought to Porto Rico for disposition, and would be guilty."

He had already instructed the jury:

"Now, if he went on board, and just casually picked up or found this (sic) on board, and was taking them on shore, he would not be guilty of bringing them into Porto Rico from Santo Domingo, because he would have nothing to do with Santo Domingo. If he went on board, and bought them from somebody there, he would not be guilty of bringing them from Santo Domingo to Porto Rico, because that would be a purchase that was in American waters, and would have nothing to do with Santo Domingo. It would be something done here. But you would have to resort to guesswork to find either of those things. There is no evidence whatever in the case that he found them, or that he bought them. If, on the other hand, you think that the facts justify you in concluding beyond a reasonable doubt that he had some employés on this boat who delivered them to him to be taken on shore for disposition, then you would find him guilty, and it is not necessary that you should think that he had ordered them from Santo Domingo."

While the statute makes it an offense to receive or take lists of drawings or instruments purporting to be lottery tickets which have been brought from a foreign country into the United States, the defendant was not charged with this; and it was an essential part of the government's case that it prove to the satisfaction of the jury, beyond a reasonable doubt, that the defendant had brought or caused such lists and tickets to be brought from Santo Domingo into the island of Porto Rico.

[2-4] The only evidence upon which the defendant was convicted was that he was found with these lists and tickets, and that when they were demanded from him he threw them overboard. There was no direct evidence, as stated by the court, that he had any accomplices aboard the Santiago de Cuba, or that he had been in any way connected with bringing the lists or tickets from Santo Domingo. There was evidence that the steamer had touched at San Juan and Mayaguez, upon the island of Porto Rico, before it came to Ponce, and from the defendant's possession of the lists and the lottery tickets, and his conduct, the inference could as well have been drawn by the jury that the tickets and lists were obtained at San Juan, or Mayaguez, or that the defendant had obtained them in the harbor of Ponce from somebody aboard the steamer Santiago de Cuba, as that he had caused them to be brought from Santo Domingo. While it was the province of the jury

to weigh the evidence, and to draw all reasonable inferences that might be drawn therefrom, we do not think that, when inferences as consistent with innocence as with guilt may be drawn from the proven facts, it can be said that there was substantial evidence to support a verdict of guilty. The attempt of the plaintiff to destroy the evidence against himself evidently had great weight with the jury.

It is pointed out in Hickory v. United States, 160 U. S. 408, 416, 16 Sup. Ct. 327, 40 L. Ed. 474, that evidence of acts of concealment—

"are competent to go to the jury as tending to establish guilt, yet they are not to be considered as alone conclusive, or as creating a legal presumption of guilt; they are mere circumstances, to be considered and weighed in connection with other proof, with that caution and circumspection which their inconclusiveness when standing alone require."

In our view of the case, we do not deem it necessary to discuss the other errors assigned, because we feel that there was no substantial evidence that the defendant had brought or caused the lists and lottery tickets to be brought from Santo Domingo, which was an essential part of the government's case, and the entry must be:

The judgment of the District Court is reversed, the verdict set aside, and the case remanded to that court for further proceedings not inconsistent with this opinion.