El Pueblo de Puerto Rico, demandante y apelado, *v.* Lucas Carrión Ortiz, acusado y apelante.

Núm. 7990.—*Sometido:* Mayo 6, 1940. *Resuelto:* Junio 18, 1940.

*B. Sánchez Castaño,* abogado del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

El Fiscal del Distrito, formuló acusación contra Víctor Manuel Rosario y Lucas Carrión Ortiz imputándoles la comisión de un delito de robo, como sigue:

". . . allá para el día 24 de noviembre, 1938, y en la municipalidad de Río Piedras, Puerto Rico, que forma parte del Distrito Judicial de San Juan, P. R., ilegal, voluntaria, maliciosa y criminal-

mente, por medio de violencia y la intimidación, sustrajeron de la persona de Portalatín Velázquez y se apoderaron contra la voluntad de éste, la suma de veintiséis dólares en efectivo y una cartera de piel, pertenecientes a y de la propiedad del referido Portalatín Velázquez.''

Los acusados solicitaron juicio por separado. El de Carrión se celebró ante un jurado en febrero 28, 1939. La prueba de cargo consistió en la declaración de Portalatín Velázquez, el perjudicado, y la de descargo en los testimonios de Carlos del Valle, Eusebio Carrión, Lucas Carrión, el acusado, y Nicolás Correa. El jurado rindió veredicto de culpabilidad y la corte dictó sentencia imponiendo a Carrión dos años de presidio con trabajos forzados.

En su alegato el acusado apelante señala dos errores que luego argumenta conjuntamente, a saber: que la prueba es insuficiente para sostener el veredicto porque consiste en la sola declaración del perjudicado que no fué corroborada y que la corte debió declarar con lugar la moción de nuevo juicio.

Expone las teorías del Pueblo y la suya así:

''La teoría del pueblo...consiste en sostener que el acusado en unión de Víctor Manuel Rosario asaltaron a Portalatín Velázquez, en la parada 37 de Hato Rey, Río Piedras, el día 24 de noviembre de 1938, le sacaron una cartera que contenía $26 del bolsillo izquierdo de la parte de atrás del pantalón.''

''Por el contrario la teoría de la defensa...consiste en negar estos hechos, alegando que (fueron)...pura invención de Portalatín Velázquez para no entregar o devolver al dueño del automóvil los $26 que le pertenecían ya que trabajaba en un automóvil público y tenía que rendir cuentas a dicho dueño.''

Procede al análisis de la evidencia, refiere el hecho de que el otro acusado, Rosario, cuyo juicio se celebró ante un juez, fué absuelto, invoca los casos de *El Pueblo* v. *González*, 13 D.P.R. 34 y *Ayala* v. *United States*, 268 F. 296, y pide la revocación de la sentencia.

■ Examinemos la prueba. La declaración de Velázquez es terminante. Acusa directamente, sin vacilación alguna, a Carrión. Dijo:

"El 24 de noviembre, mientras que yo regresaba de la isla en un carro público, cuando fuí a llegar cerca de mi casa,...que serían como las once y media o doce de la noche, o las doce menos cuarto ...la calle noté que estaba algo mala...y al llegar al cruce de la vía tuve necesidad de cambiar el carro de una velocidad para otra. ...Entonces el señor Carrión, de una manera espectacular, el señor Víctor me cogió esta mano sobre el guía así, poniéndome un revólver en este lado, y luego el otro por el otro lado me cogió esta mano y la sacó fuera de la ventanilla, poniéndome un revólver aquí cada uno y yo impedido de hacer nada, porque el carro se quedó sin motor.... Me sacaron una cartera que contenía $26 del bolsillo izquierdo, en la parte de atrás del pantalón, y luego entonces de haberme sacado la cartera el que estaba al lado izquierdo se aguantó y le dijo al otro, 'ya está'. Entonces el que está de la mano derecha da una vuelta por detrás del carro y cuando estaban los dos juntos se fueron y me dejaron allí.... P. ¿Cuál fué el que le sacó la cartera? R. Este señor (señalando al acusado). P. ¿Usted está seguro? R. Sí, señor. P. ¿Usted lo vió bien a él? R. Sí, señor. P. ¿Siendo de noche, cómo pudo verlo a él? R. Por la claridad del *dash* del carro... P. ¿Entonces usted puede afirmar si era esta persona o era otra, o se le puede confundir con otra persona? R. Sí, señor, lo puedo asegurar. P. ¿Puede asegurar que era el mismo? R. Sí, señor."

Continuó declarando que conocía a los acusados "así, de pasada, que los oía nombrar" y que no había tenido disgusto alguno con ellos.

Fué entonces amplia, repetida e insistentemente repreguntado por la defensa y se mantuvo siempre en lo dicho. Jurados le interrogaron varias veces. No se advierte en su declaración contradicción fundamental alguna.

El primero de los testigos de descargo que declaró fué Carlos del Valle, de diez y seis años de edad a la fecha del juicio.

Preguntado por la defensa si Velázquez fué donde él a pedirle que dijera que el acusado era uno de los que lo habían.

asaltado, contestó "Sí, señor" y repreguntado por el fiscal respondió como sigue:

"P.—¿Usted dijo que usted no había visto a este acusado en el atraco ese?—R.—Que yo no lo había visto.—P.—Si usted no ha declarado eso.—R.—Yo lo había declarado aquí.—P.—¿Usted declaró que los vió a ellos en el atraco?—R.—No.—P.—¿Pues usted nunca ha declarado eso, ni allá ni acá, no es eso?  ¿Usted dijo que Portalatín le llamó a usted y dice usted que le dijo para que dijera si los había visto o no a este muchacho?—R.—Sí, señor.—P.—No es que Portalatín le dijera a usted que dijera falsamente que ellos habían sido los del atraco.  De modo que él le llamó para que dijera si los había visto o no los había visto.—R.—Sí, señor.—P.—¿Y usted nunca vió a este muchacho?—R.—No.—P.—¿Usted declaró algo ante mí que vió a este muchacho en casa de Víctor Manuel esa noche, como a las once de la noche, juntos?—R.—Sí, señor.—P.—¿En qué dirección los vió usted?—R.—Yo los vi en la casa.''

Interviene la defensa y luego el fiscal con el siguiente resultado:

"P.—¿Es o no cierto que Portalatín le exigió a usted que dijese que estos señores lo atracaron a él?—R.—Sí, señor.—P.—¿Y usted no vió a esta gente por allí?—R.—No, señor.—Sr. Fiscal: (al testigo) Pero usted me acaba de contestar a mí que lo que le preguntó Portalatín Velázquez fué que si usted había visto a estos señores atracándolo.—R.—Eso me lo preguntó él a mí.—Sr. Sánchez Castaño: (al testigo)  ¿Él lo trajo donde el Juez a declarar, entre el policía y él?—R.—Sí, señor.—Sr. Fiscal: Usted nunca me declaró haber visto a este muchacho que lo atracaran, sino que los vió salir de su casa, a uno de ellos, como a las once por ese sitio.—R.—Sí, señor.— Sr. Sánchez Castaño: ¿Pero es o no cierto que Portalatín le dijo que declarase todo eso?—R. Sí, señor.—P.—¿Y eso no es verdad?—R.—No, señor.—P.—¿Usted no vió a esta gente por ningún sitio?—R.—No, señor.''

El otro testigo Eusebio Carrión, tío del acusado, dijo que en la investigación preliminar ante la policía Velázquez manifestó:

" ...'yo no los conozco, yo no sé quiénes son esa gente, porque como era de noche y ellos estaban tapados y en la noche no se puede ver y era un sitio obscuro,'...''

Dijo que su sobrino era ebanista y que siempre había ganado su buen dinero trabajando.

El acusado declaró que había trabajado con varias personas que nombró y ganaba de 14 a 20 pesos semanales y en la noche de autos estuvo jugando *poker* cerca del Teatro Estrella con Nicolás Cosme, dieron las nueve y le dijo a su amigo "yo me voy porque tengo que acostarme temprano". Pasó por un cafetín, compró algo para el desayuno del próximo día, siguió para su casa y se acostó. Era amigo de su coacusado aunque una vez tuvieron un disgusto y desde entonces no ha vuelto a relacionarse con él.

Por último Nicolás Correa dijo que era cierto que en la noche de autos, como a las nueve, estuvo jugando *poker* con el acusado.

¿Es suficiente la prueba? A nuestro juicio lo es. Sólo existe un testigo, es cierto, pero de acuerdo con la ley y la jurisprudencia la declaración de un solo testigo que merezca entero crédito al jurado puede servir de base a un veredicto de culpabilidad.

Examinado en sí mismo el testimonio de Velázquez encontramos que el hecho que imputa a los acusados no es inverosímil. Pudo ocurrir tal como en él se describe. Es completo. Contiene todos los elementos necesarios para declarar perpetrado el delito de robo y para condenar al acusado como autor del mismo. Todo depende de si se cree o no.

En cuanto a la teoría de la defensa, esto es, que lo declarado por Velázquez era pura invención para dejar de pagar cierta suma, pudo ser así, pero no estaba obligado el jurado por ello a dejar de creerlo, tanto más cuanto que tal actuación no es conforme a la manera de proceder normal de los seres humanos. Se concibe que una persona irresponsable simule un robo, un asalto de personas desconocidas, para librarse del pago de cierta suma, pero no que acuse directamente de la perpetración del robo a otros seres humanos con quienes no ha tenido disgusto alguno. Eso sería lo anormal, no lo corriente.

En cuanto a lo declarado por Del Valle, saltan a la vista sus vacilaciones y la influencia que sobre él ejerce la persona que actualmente le pregunta. Parece natural que el perjudicado indagara si otras personas habían presenciado los hechos a fin de que declararan como testigos. Y no creemos que pueda concluirse de las afirmaciones y negaciones escuetas de Del Valle sobre hechos contenidos en las preguntas que se le formularon que el perjudicado tratara de inducirlo a que declarara lo que en verdad no sabía.

La declaración del último testigo de descargo no tiene importancia. Las del acusado y su tío contradicen la del perjudicado en su totalidad la primera y en cuanto al conocimiento de los asaltantes la segunda. El jurado dirimió el conflicto sin que exista la más leve indicación de que actuara movido por pasión, prejuicio o parcialidad o de que cometiera error manifiesto, y su decisión, bajo tales circunstancias, debe subsistir.

■ Si pudiera tomarse en consideración la absolución del otro acusado en otro juicio y por distinto juzgador, siempre habría que concluir que no era obligatoria en éste, que tiene que ser decidido por sus propios méritos.

En el caso de *El Pueblo* v. *González,* supra, invocado por el apelante, se dijo en el curso de la opinión:

"Examinada y considerada detenidamente la exposición de hechos, tal como ha sido aprobada por el juez inferior, no encontramos prueba alguna de que el apelante sea autor responsable del infamante delito contra natura.

"El único cargo que contra aquél existe, es la declaración del presunto ofendido, muchacho de once años de edad, que si no es idiota, muestra signos de propensión al idiotismo. Esa declaración es en sí misma contradictoria y carece de fuerza legal para poder fundar en ella una convicción."

La situación era allí muy distinta. La jurisprudencia no es aplicable.

Tampoco lo es la del otro caso invocado o sea el de *Ayala* v. *United States,* supra. En él la Corte de Circuito de Ape-

laciones del Primer Circuito, por medio del Juez Johnson, en lo pertinente, se expresó así:

"Si bien el estatuto establece como delito el recibir o tomar listas de sorteos o instrumentos que se supongan ser billetes de lotería, traídos de un país extranjero a los Estados Unidos, no se imputó esto al acusado; y era parte esencial del caso de El Pueblo el probar a satisfacción del jurado fuera de toda duda razonable que el acusado había traído o había hecho traer tales listas y billetes de Santo Domingo a la isla de Puerto Rico.

"La única evidencia por la cual se condenó al acusado fué el habérsele encontrado estas listas y billetes y el haberlos arrojado al mar al serle los mismos requeridos. No hubo evidencia directa, conforme declara la corte, de que él tuviera algún cómplice a bordo del 'Santiago de Cuba' o que estuviese dedicado en alguna forma a traer las listas o billetes de Santo Domingo. Hubo prueba de que el barco hizo escala en San Juan y Mayagüez en la isla de Puerto Rico, antes de venir a Ponce, y del hecho de encontrarse las listas y los billetes de lotería en posesión del acusado y de su propia conducta pudo igualmente inferirse por el jurado que los billetes y las listas se obtuvieron en San Juan o en Mayagüez, o que el acusado los había obtenido en el puerto de Ponce de alguien a bordo del barco 'Santiago de Cuba', o bien que él los hizo traer de Santo Domingo.

"Si bien era de la incumbencia del jurado el apreciar la prueba y hacer de ella todas las inferencias razonables, no creemos que cuando de los hechos probados puedan derivarse inferencias consistentes tanto con la inocencia como con la culpabilidad del acusado, pueda decirse que hubo prueba substancial para sostener un veredicto de culpabilidad. El esfuerzo del demandante para destruir la prueba en su contra causó evidentemente gran efecto en el jurado.

"En *Hickory* v. *United States,* 160 U. S. 408, 416, 16 Sup. Ct. 327, 40 L. ed. 474, se dice que evidencia de actos de ocultación 'puede ir al jurado por tender a establecer su culpabilidad, pero no debe ser considerada concluyente por sí sola, ni como creadora de una presunción legal de culpabilidad; tales actos son meras circunstancias, a ser consideradas y apreciadas en relación con otra prueba, con la cautela y circunspección que requieren su carácter no concluyente al ser consideradas por sí solas.'" Págs. 299, 300.

La situación aquí es distinta. El testigo del Pueblo declaró que fué el acusado el que cometió el delito. No se

trata de inferencias, si que de una imputación directa. Si es verdad lo que dijo Portalatín Velázquez, el acusado es culpable. Y ya hemos visto que como verdad lo creyó el jurado y que la sentencia absolutoria que contra el otro acusado pronunciara otro juez como resultado de otro juicio, no es obligatoria en éste.

*Por virtud de todo lo expuesto, nos sentimos obligados a declarar sin lugar el recurso y a confirmar la sentencia apelada.*

El Juez Asociado Sr. Hutchison disintió.[*]